Snell & Wilmer L.L.P.
Keith M. Gregory, Bar No. 117837
kgregory@swlaw.com
Aliya L. Astaphan, Bar No. 340162
aastaphan@swlaw.com
City National 2CAL
350 South Grand Avenue
Suite 3100
Los Angeles, California 90071-3420
Telephone: 213.929.2500
Facsimile: 213.929.2525

Attorneys for Plaintiff
AR Young Investments, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AR YOUNG INVESTMENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MANNY HALLEY PRODUCTIONS, LLC, IMANI MEDIA GROUP INC, IMANI HALLEY AKA MANNY HALLEY, AND DOES 1-10,<br><br>Defendants. | Case No. 2:25-cv-11349<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br><br>**(2) CONVERSION**<br><br>**(3) OPEN BOOK ACCOUNT**<br><br>**(4) MONEY HAD AND RECEIVED**<br><br>**(5) FRAUD**<br><br>**Trial by Jury Demanded** |

Plaintiff AR Young Investments, LLC ("Plaintiff") by and through its counsel, Snell & Wilmer L.L.P., hereby brings this Complaint and alleges as follow:

## INTRODUCTION

1. This Action arises from a series of written financing agreements entered into in June and July 2025 under which Plaintiff loaned a total of $330,000 to Defendant Manny Halley Productions, LLC ("Halley Productions") for the production of certain media projects, including episodes of the television series "Lot Patrol" and episodes of the "True to the Game" television series. In exchange, Halley

COMPLAINT

4904-2409-3561

Productions, through its sole member, defendant Imani Halley aka Manny Halley ("Halley"), promised prompt repayment within fixed deadlines. Halley Productions, through Halley, also agreed to the payment of daily penalty fees if repayment was not timely made.

2. Halley Productions failed to repay Plaintiff within the agreed timeframes. Halley Productions has failed to repay Plaintiff at all. As of the date of the filing of this Action, Halley Productions' outstanding balance is at least $598,180. Despite repeated demand, Halley Productions and Halley refuse to pay.

## PARTIES

3. Plaintiff AR Young Investments, LLC is a limited liability company organized and existing in the State of Texas with its principal place of business in Houston, Texas. Plaintiff consists of two individual members, both of whom are citizens of the State of Texas. Therefore, Plaintiff is a citizen of the State of Texas.

4. Plaintiff is in the business of providing financing and investment capital to various ventures including television and film productions.

5. Plaintiff is informed and believes, and on that basis alleges that defendant Halley is an individual residing in the State of California, who is the sole member of defendant Halley Productions, and the founder, CEO, and CFO of defendant Imani Media Group Inc ("IMG") (Halley, Halley Productions, and IMG, will be referred to collectively as "Defendants"). Halley holds himself out through Halley Productions and IMG as a producer and distributor of media content such as movies and television shows. Plaintiff is informed and believes, and on that basis alleges that Halley exercised control over the finances and managed the operations of Halley Productions and IMG. Plaintiff is further informed and believes, and on that basis alleges, that Halley treated the assets of Halley Productions, including the funding provided by Plaintiff pursuant to the agreements alleged herein, as his own such that there is no economic distinction between Halley and Halley Productions.

6. Defendant Halley Productions is limited liability company organized and existing under the laws of the State of California, with its principal place in Los Angeles County, California.

7. Defendant IMG is a California corporation with its principal place of business in Los Angeles County, California. According to its website, IMG "is a 21st century production, management and distribution company that leverages a network of production partners to create cutting edge content" including movies and television shows. Based on IMG's filings with the California Secretary of State, Halley is IMG's CEO and CFO. Plaintiff is informed and believes, and on that basis alleges, that IMG treated the assets of Halley Productions, including the funding provided by Plaintiff pursuant to the agreements alleged herein, as its own such that there is no economic distinction between IMG and Halley Productions.

8. Plaintiff is informed and believes, and on that basis alleges that IMG and Halley Productions are both owned, at least in part, by Halley. Plaintiff is further informed and believes, and on that basis alleges that Halley dominated, influenced and controlled Halley Productions and IMG, and each of them; and that IMG dominated, influenced, and controlled Halley Productions such that individuality and separateness of Defendants, if any ever existed, has ceased, and it is necessary to treat them as alter egos in order to avoid manifest injustice. Plaintiff is further informed and believes, and on that basis alleges that adherence to the fiction of separateness of the existence of Halley Productions, IMG, and Halley would permit an abuse of the corporate franchise and privilege, and would sanction a fraud or promote injustice by, *inter alia*, allowing parties that benefited from the financing provided by Plaintiff to escape responsibility for repayment thereof. In short, Defendants worked with one another to divest Plaintiff of funds, which Halley represented would be used for the production of certain episodes of Lot Patrol and True to the Game, Defendants have benefitted from those funds, and have subsequently refused to repay those funds to

Plaintiff. Halley Productions acted as an instrumentality of Halley and IMG, under Halley's direction and control, to obtain the funds; Defendants then used the funds; and Defendants are now jointly and severally liable to Plaintiff to repay the funds.

9. In addition, Plaintiff is informed and believe and on that basis alleges that Halley failed to adequately capitalize Halley Productions to perform obligations due to Plaintiff, leaving Halley Productions unwilling and unable to perform its obligations at issue herein, and leaving it in a circumstance where, at all times relevant, its liabilities exceeded its assets or would exceed its assets if performance became due, and it was unable to and knew it was unable to perform its obligations under the agreements alleged herein. Halley conducts business and communications for Halley Productions and IMG and for himself simultaneously such that there is no distinction between the decisions, actions, and communications of any Defendant versus the other, and Halley communicates on behalf of each of them in the same manner no matter which Defendant any action is purportedly taken on behalf of, with the consequence being that Halley's day to day affairs on behalf of any Defendant are indistinguishable from Halley's day to day affairs on behalf of himself or the other Defendant, thereby proving the lack of distinction between Defendants.

10. Plaintiff does not know the true names and capacities of the defendants sued in this Action as Doe 1 through Doe 10, inclusive, and therefore sues those defendants by fictious names. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 10, inclusive, when ascertained. Plaintiff is informed and believes, and on that basis alleges that Doe 1 through Doe 10, and each of them, are in some manner liable to Plaintiff for the damages stated herein. Plaintiff is informed and believes, and on that basis alleges that Doe 1 through Doe 10, and each of them, participated in and/or ratified the acts, omissions, and wrongs alleged herein, Additionally, or in the alternative, Plaintiff is informed and believes, and on that bases alleges that Doe 1 through Doe 10, and each of them, are the agents or alter

egos of Halley, IMG, Halley Productions, and/or some or all of them together.

## JURISDICTION

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity among the parties because Plaintiff is a citizen of the State of Texas and Plaintiff is informed and believes, and on that basis alleges that each Defendant is a citizen of the State of California, and because the amount in controversy exceeds $75,000.

    a. Plaintiff is a citizen of the State of Texas because it is a limited liability company, made up of two members, who are both domiciled in the State of Texas.

    b. IMG is a citizen of the State of California because it is a corporation organized in the State of California with its principal place of business in the State of California.

    c. Plaintiff is informed and believes, and on that basis alleges that Halley Productions is a citizen of the State of California because it is a limited liability company whose sole member, Halley, is domiciled in the State of California.

    d. Plaintiff is informed and believes, and on that basis alleges that Halley is a citizen of the State of California because he is domiciled in the State of California.

12. This Court has general and specific personal jurisdiction over each Defendant.

    a. Halley Productions' principal place of business is located at 9903 Santa Monica Boulevard, Suite 451, Beverly Hills, California 90212. Plaintiff is informed and believes, and on that basis alleges, that Halley Productions is authorized and qualified to conduct business, and does conduct a significant amount of

business, in the State of California.

b. IMG's principal place of business is located at 9903 Santa Monica Boulevard, Suite 451, Beverly Hills, California 90212. Plaintiff is informed and believes, and on that basis alleges, that IMG is authorized and qualified to conduct business, and does conduct a significant amount of business, in the State of California.

c. Plaintiff is informed and believes that Halley is domiciled in the State of California and he conducts a significant amount of business within the state.

d. Finally, the agreements at issue in this Action were entered into, performed, and breached, at least on the part of Defendants, in the State of California.

## VENUE

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Halley Productions' and IMG's principal place of business is located in this district and they conduct a substantial amount of business in this district. Venue is proper in this Court as to Halley pursuant to 28 U.S.C. § 1391(b) and (c) because he resides in this district and conducts a substantial amount of business in this district.

## GENERAL ALLEGATIONS

14. On or about June 26, 2025, Plaintiff and Halley Productions entered into a written agreement pursuant to which Plaintiff loaned $100,000 to Halley Productions for the production of two episodes of the television series "Lot Patrol" ("Lot Patrol") (the "Lot Patrol Agreement"). In exchange, Halley Productions agreed to repay the Plaintiff in full, within ninety days of the date of the agreement, and agreed to pay a penalty fee of 1.1% per day on any unpaid balance after the due date, accruing daily until paid in full. The parties also agreed to certain terms regarding

residual participation payments and credits. The Lot Patrol Agreement is dated June 26, 2025. Therefore, repayment in full was due on September 24, 2025.

15. On or about June 26, 2025, Plaintiff and Halley Productions entered into a second written agreement pursuant to which Plaintiff loaned $100,000 to Halley Productions for the production of two episodes of the television series "True to the Game TV Series" ("True to the Game") (the "TTG Agreement"). In exchange, Halley Productions agreed to repay Plaintiff in full, within ninety days of the date of the signed agreement, and agreed to pay a penalty fee of 1.1% per day on any unpaid balance after the due date, accruing daily until paid in full. The parties also agreed to certain terms regarding residual participation payments and credits. The TTG Agreement was fully executed on June 29, 2025. Therefore, repayment in full was due on September 27, 2025.

16. On or about July 20, 2025, Plaintiff and Halley Productions entered into a third written agreement pursuant to which Plaintiff loaned $130,000 to Halley Productions for what Halley Productions and Halley represented were various production-related expenses for True to the Game and for Lot Patrol's payroll costs (the "July 20th Loan Agreement," collectively with the Lot Patrol Agreement and the TTG Agreement, the "Agreements"). In exchange, Halley Productions agreed to repay the loan in full by August 20, 2025, and to pay a penalty fee of 1.1% per day on any unpaid balance thereafter. The parties also agreed to certain terms regarding residual participation payments.

17. In reliance on Halley Productions' and Halley's promises and representations, Plaintiff funded the foregoing agreements.

    a. On June 26, 2025, Plaintiff transferred $100,000 to Halley Productions pursuant to the Lot Patrol Agreement.

    b. On July 1, 2025, Plaintiff transferred $100,000 to Halley Productions pursuant to the TTG Agreement.

      c. On July 21, 2025, Plaintiff transferred $130,000 to Halley Productions pursuant to the July 20th Loan Agreement.

      d. These transfers totaled $330,00 in principal consideration under the Agreements.

18. Defendants failed to repay the amounts due within their respective deadlines. As a result of Defendants' default, contractual penalty fees of 1.1% per day began accruing on the outstanding balances.

19. On October 3, 2025, Plaintiff, through counsel, delivered a written demand for payment to Halley Productions and Halley, reaffirming the agreements and notifying Defendants of their default.

20. On October 16, 2025, Plaintiff's counsel reiterated the default and demanded payment in full by October 17, 2025, and advising them of the amount-then due including the principal and daily accruing penalty fees. Despite repeated demands, Defendants have not paid the amounts owed.

21. At all relevant times, Halley, individually and through Halley Productions and IMG, controlled the receipt and use of Plaintiff's funds and directed the disposition of those funds. On information and belief, Defendants used some or all of Plaintiff's funds for purposes inconsistent with the agreed use and without Plaintiff's authorization, while refusing to return the funds or pay the contractually required returns and late charges.

22. Plaintiff has performed all conditions, covenants, and promises required of it under the Agreements, or such conditions have been excused or waived. Defendants' failures to repay constitute material breaches that have caused Plaintiff substantial damage.

//

//

//

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (against all Defendants)

23. Plaintiff realleges paragraphs 1 through 22 as though fully set forth herein.

24. Plaintiff and Halley Productions entered into valid, binding written agreements: the Lot Patrol Agreement, the TTG Agreement, and the July 20th Loan Agreement.

25. Plaintiff performed under the Agreements by advancing the funds to Halley Productions pursuant each of the Agreements' terms.

   a. On June 26, 2025, Plaintiff transferred $100,000 to Halley Productions pursuant to the Lot Patrol Agreement.

   b. On July 1, 2025, Plaintiff transferred $100,000 to Halley Productions pursuant to the TTG Agreement.

   c. And, on July 21, 2025, Plaintiff transferred $130,000 to Halley Productions pursuant to the July 20th Loan Agreement.

   d. These transfers totaled $330,00 in principal consideration under the Agreements.

26. Halley Productions breached the Agreements by failing to repay the principal within the specified deadlines and by failing to pay the contractually specified late fees after default.

27. As alleged above, Halley and IMG, and each of them, are the alter egos of Halley Productions such that they are each jointly and severally liable for Halley Productions' breaches of the Agreements.

28. In addition, Halley acted as the principal of Halley Productions and authorized, directed, controlled, or ratified the acts and omissions that constitute the breaches alleged herein, and Halley Productions acted as Halley's agent in entering

1  not and performing (or failing to perform) the agreements alleged herein. For these
2  reasons, Halley is liable for the obligations and breaches of Halley Productions as its
3  alter ego and/or principal, and Plaintiff is entitled to pierce the corporate veil to hold
4  Halley jointly and severally liable for Halley Productions' breaches of the
5  Agreements.

6  29. As a direct and proximate cause of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial, including at least the unpaid principal, penalty fees accruing at 1.1% per day on outstanding balances from the respective due dates, plus prejudgment and any other relief permitted by law, but for no less than $598,180. The penalty fees continue to accrue.

## SECOND CLAIM FOR RELIEF
## CONVERSION
### (against all Defendants)

30. Plaintiff realleges paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff has a right to possession of identifiable funds delivered to Halley Productions for specified purposes and subject to repayment by fixed dates and contractually required default penalty fees.

32. Defendants are in possession of those Plaintiff's funds and continue to wrongfully exercise dominion and control over them by retaining and/or diverting them for unauthorized uses and refusing to return them upon demand.

33. By continuing to possess Plaintiff's funds without Plaintiff's consent, Defendants have exerted and continue to exert wrongful dominion over Plaintiff's property in derogation, exclusion, and defiance of Plaintiff's rights.

34. As a result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $330,000.

35. Defendants' conduct was willful, malicious, oppressive, and fraudulent

because they continue to retain Plaintiff's funds despite multiple demands from Plaintiff and in contravention of Plaintiff's rights under the Agreements of which all Defendants are aware. Plaintiff is therefore entitled to punitive damages and exemplary damages pursuant to Civil Code section 3294 and any other applicable law, and all other relief available at law or in equity.

## THIRD CLAIM FOR RELIEF
## OPEN BOOK ACCOUNT
### (against all Defendants)

36. Plaintiff realleges paragraphs 1 through 35 as though fully set forth herein.

37. Plaintiff and Halley Productions had financial transactions with each other.

    a. On June 26, 2025, Plaintiff loaned Halley Productions $100,000, which Halley Productions promised to repay by September 24, 2025, or be subject to a penalty fee of 1.1% on the unpaid balance for each day that it was overdue.

    b. On July 1, 2025, Plaintiff loaned Halley Productions $100,000, which Halley Productions promised to repay by September 27, 2025, or be subject to a penalty fee of 1.1% on the unpaid balance for each day that it was overdue.

    c. On July 21, 2025, Plaintiff loaned Halley Productions $130,000, which Halley Productions promised to repay by August 20, 2025, or be subject to a penalty fee of 1.1% on the unpaid balance for each day that it was overdue.

38. Halley Productions has not repaid the funds as promised. As Halley Productions' alter egos, IMG and Halley are jointly and severally liable for Halley Productions' outstanding balance. In addition, Halley acted as the principal of Halley

Productions and authorized, directed, controlled, or ratified Halley Productions' wrongful retention of funds owed on the account stated, and is jointly and severally liable for Halley Productions' outstanding balance.

39. In the regular course of its business, Plaintiff kept a written record of the debits and credits involved in each transaction.

40. Defendants owe Plaintiff money on that account in the amount of at least $598,180 plus the additional penalty fees that continue to accrue each day until the funds are remitted to Plaintiff.

## FOURTH CLAIM FOR RELIEF
## MONEY HAD AND RECEIVED
### (against all Defendants)

41. Plaintiff realleges paragraphs 1 through 40 as though fully set forth herein.

42. Defendants received money from Plaintiff for Plaintiff's benefit, on the condition that it be repaid within specified times and subject to a 1.1% penalty fee for each day that the funds were past due.

43. Defendants have not repaid the money and are therefore indebted to Plaintiff for money had and received in an amount to be proven at trial, but no less than $330,000.

## FIFTH CLAIM FOR RELIEF
## FRAUD
### (against all Defendants)

44. Plaintiff realleges paragraphs 1 through 43 as though fully set forth herein.

45. As early as March 2025, Halley represented to Plaintiff that he and his companies sought financing to be used in the production of the television series Lot Patrol and True to the Game. Halley sought out financing, in the form of a loan, from

Plaintiff. Halley represented that the monies would be used to fund the production costs of certain episodes of each television series. Halley further represented that the loans would be paid back within a certain time frame; that a penalty fee of 1.1% per day after default would be paid for any amount past due on each respective loan; and that Plaintiff would be paid back end participation percentage on the profits of each respective episode to which the loan applied and receive a "Producer" or equivalent credit for those episodes.

46. On or about June 26, 2025, Halley sought out a loan of $100,000 for the production of Lot Patrol from Plaintiff. Halley represented that the funds would be used to produce two episodes of Lot Patrol. Halley further represented that Plaintiff would be repaid in full by September 24, 2025 and that if Plaintiff was not paid in full by that date, Halley Productions would pay Plaintiff an additional 1.1% per day on any amount of the principal that had not been paid.

47. Relying on Halley's representation, Plaintiff transferred $100,000 to Halley Productions on June 26, 2025 for the production of two episodes of Lot Patrol. Plaintiff's reliance was reasonable because Halley held himself and his companies, Halley Productions and IMG, out as reputable and legitimate producers with a resume of successful entertainment projects including the 2017 motion picture True to the Game, its 2020 sequel True to the Game 2, and its 2021 sequel True to the Game 3.

48. On or about June 26, 2025, Halley sought out a second loan of $100,000 for the production of the True to the Game television series from Plaintiff. Halley represented that the funds would be used to produce two episodes of True to the Game. Halley further Halley further represented that Plaintiff would be repaid in full by September 27, 2025 and that if Plaintiff was not paid in full by that date, Halley Productions would pay Plaintiff an additional 1.1% per day on any amount of the principal that had not been paid.

49. Relying on Halley's representation, Plaintiff transferred $100,000 to

Halley Productions on July 1, 2025 for the production of two episodes of True to the Game. Plaintiff's reliance was reasonable because Halley held himself and his companies, Halley Productions and IMG, out as reputable and legitimate producers with a resume of successful entertainment projects including the 2017 motion picture True to the Game, its 2020 sequel True to the Game 2, and its 2021 sequel True to the Game 3.

50. On or about July 20, 2025, Halley sought out a third loan of $130,000 for the production of the True to the Game television series and Lot Patrol from Plaintiff. Halley represented that the funds would be used for the following production expenses:

   a. $48,322.82 for Lot Patrol's payroll costs
   b. $81,677.18 for True to the Game, broken down as follows:
      i. $9,865 for Film LA costs
      ii. $1,039 for Film Burbank costs
      iii. $8,700 for costs Halley classified as "Sereel"
      iv. $2,000 for catering costs
      v. $13,815.00 for Halley classified as "Studio 60"
      vi. $8,775 for costs Halley classified as "Giggle"
      vii. $11,500 for costs Halley classified as "Villa Serena"
      viii. $26,483.18 for transportation costs

51. Halley further represented that Plaintiff would be repaid in full by August 20, 2025 and that if Plaintiff was not paid in full by that date, Halley Productions would pay Plaintiff an additional 1.1% per day on any amount of the principal that had not been paid.

52. Relying on Halley's representation, Plaintiff transferred $130,000 to Halley Productions on July 21, 2025 for the aforementioned production expenses for the True to the Game television series and Lot Patrol. Plaintiff's reliance was

1  reasonable because Halley held himself and his companies, Halley Productions and
2  IMG, out as reputable and legitimate producers with a resume of successful
3  entertainment projects including the 2017 motion picture True to the Game, its 2020
4  sequel True to the Game 2, and its 2021 sequel True to the Game 3.

5        53.    Plaintiff is informed and believes, and on that basis alleges that Halley
6  knew the aforementioned representations were false at the time they were made and
7  that he made them on behalf of himself , Halley Productions, and IMG, in order to
8  take advantage of Plaintiff for his own financial gain and/or for the financial gain of
9  Halley Productions and/or IMG. Plaintiff is informed and believes, and on that basis
10 alleges that Defendants had no intention of repaying the loans at the time Halley
11 made the aforementioned representations and/or that Halley knew that Defendants
12 did not have the financial ability to repay Plaintiff. Further, Plaintiff is informed and
13 believes and on that basis alleges that Plaintiff did not intend to use funds for the
14 purposes that he stated to Plaintiff. Plaintiff had not been involved in film or
15 television production or financing prior to doing business with Halley. Halley knew
16 this fact and took advantage of Plaintiff.

17       54.    Plaintiff is informed and believes, and on that basis alleges that
18 Defendants did not use the funds for the purposes that Halley represented they would
19 be used for. Plaintiff is informed and believes and on that basis alleges that the funds
20 were not for the production of the True to the Game television series or Lot Patrol.
21 Further, Plaintiff is informed and believes, and on that basis alleges that Defendants
22 did not use the $130,000 that were dispersed on July 21, 2025 for the specific
23 expenses that Halley represented that they would be used for.

24       55.    Plaintiff has been injured by Defendants' fraud. Relying on Halley's
25 representations, which he made on behalf of himself, IMG, and Halley Productions,
26 Plaintiff transferred a total of $330,000 to Halley Productions. Defendants have
27 misappropriated those funds for their own financial gain. As a result of Defendants'
28

fraud, Plaintiff has been damaged in an amount of at least $330,000, with the exact amount to be determined at trial.

56. The actions of Defendants were undertaken with fraud, oppression, and malice and with the intent of depriving Plaintiff of its funds, thus justifying an award of punitive and exemplary damages pursuant to Civil Code section 3294, and any other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AR Young Investments, LLC respectfully requests the Court enter judgment against Defendants Manny Halley Productions, LLC, Imani Media Group Inc, and Imani Halley aka Manny Halley, as follows:

**ON THE FIRST AND THIRD CLAIMS:**

1. For damages in the amount to be proven at trial but no less than $598,180;

2. For interests on such damages awarded at the legal rate until paid, including pre-judgment interest and post-judgment interest at the legal rate; and

3. For such other and further relief as the Court deems just and proper.

**ON THE SECOND AND FIFTH CLAIMS:**

1. For damages in the amount to be proven at trial but no less than $330,00;

2. For interests on such damages awarded at the legal rate until paid, including pre-judgment interest and post-judgment interest at the legal rate;

3. For punitive and exemplary damages pursuant to Civil Code section 3294 and any other applicable law; and

4. For such other and further relief as the Court deems just and proper.

**ON THE FOURTH CLAIM:**

5. For damages in the amount to be proven at trial but no less than $330,00;

4904-2409-3561

6. For interests on such damages awarded at the legal rate until paid, including pre-judgment interest and post-judgment interest at the legal rate; and

7. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on each and every claim set forth herein.

Dated: November 25, 2025         SNELL & WILMER L.L.P.

By: _____
Keith M. Gregory
Aliya L. Astaphan

Attorneys for Plaintiff
AR Young Investments, LLC

4904-2409-3561